# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| OSCAR FERNANDO GONZALEZ OBREGON, | § § § § § § § § § § § § | |
| *Plaintiff* | | |
| V. | | C. A. NO. 4:24-cv-03371 |
| JORGE ROMO, JR. | | |
| *Defendant* | | |

## DEFENDANT JORGE ROMO, JR.'S SUPPLEMENTAL RESPONSE TO PLAINTIFF'S ORIGINAL PETITION SEEKING RECOGNITION OF FOREIGN JUDGMENT

Defendant Jorge Romo, Jr. ("Defendant") files this Supplemental Response to Plaintiff's Original Petition Seeking Recognition Of Foreign Judgment and in support, Defendant shows as follows:

## BACKGROUND

1. In the summer of 2018, Plaintiff approached Defendant with an offer to purchase a house in a country club for 17 million pesos. This transaction marked the beginning of a complex and contentious relationship. By December 2018, Plaintiff provided Defendant with an incomplete promissory note ("pagare") which did not include the interest rate, which upon information and belief, was later added

outside of the presence of and permission by Defendant.

2.  ***Plaintiff never paid any funds to Defendant.***

3.  Plaintiff alleged that Defendant failed to meet the repayment deadline on the Note and initiated legal action. On October 18, 2019, Plaintiff filed his Original Petition in the 113th District Court of Harris County, Texas, under Cause No. 2019-76619, styled Oscar Gonzalez v. Jorge Romo, seeking recovery of the alleged debt.

4.  On October 28, 2019, Plaintiff filed a First Amended Petition in which he provided four addresses at which Defendant could be served: 29 Mayapple Blossom Place, Tomball, Texas 77375; 26400 Kuykendahl Road, Tomball, Texas 77375; 2930 Sam Houston Parkway, Houston, Texas 77042; or 10155 North Freeway Houston, Texas 77037.

5.  On November 20, 2019, Plaintiff filed a related lawsuit in Aguascalientes, Mexico. In this cause of action Plaintiff sought to surreptitiously lodge a default judgment against Defendant. To do that, Plaintiff provided only one address at which Defendant could be served: 29 Mayapple Blossom Place, Tomball, Texas 77375. The courts failed to serve him at this address, and after multiple attempts of service at old addresses in Mexico, Plaintiff, through his attorney, falsely represented that all potential addresses for Defendant had been exhausted, knowing full well he could have been located at multiple addresses in Texas, and

knowing full well that Defendant resided in Texas. (See Plaintiff's First and Second Amended Petitions). Defendant never received any actual notice of this matter until 2023, after the default judgment was obtained. See Defendant's Exhibits A, B, and C.

6. In December 2019, Plaintiff filed a Second Amended Petition, detailing the amount allegedly owed due to accumulating interest and seeking damages exceeding $1 million USD. The petition asserted these key disputed facts: Plaintiff had provided Defendant with 17 million pesos on December 13, 2018 [an assertion Defendant says is false, See Exhibit A, Affidavit of Jorge Romo], and Defendant had signed a promissory note on December 14, 2018, ostensibly agreeing to repay the amount by January 31, 2019.

7. The note, modified without the knowledge, direction, or consent of Defendant, stated that if Defendant failed to repay the debt, a monthly interest rate of 3.08% would apply. Having never actually agreed to these terms or received any money, Defendant did not repay the alleged 17 million pesos debt, nor did he pay the alleged accrued interest. Plaintiff then pursued legal action to enforce this controverted note that would properly fail for lack of consideration.

8. Defendant's defense team responded by filing a Plea to the Jurisdiction, arguing that the Texas court lacked jurisdiction over a debt incurred and payable in Mexico. Plaintiff countered by emphasizing that Defendant was a Texas resident

and that the Texas district court had general jurisdiction over civil matters involving state residents.

9. To support his case, Plaintiff submitted a sworn declaration from Alfredo Rodríguez Flores, a licensed attorney in Mexico. In his declaration, Rodríguez Flores affirmed the validity of the promissory note under Mexican law, noting that the 3.08% monthly interest rate equated to an annual effective rate of 36.96%, which he argued was legal under Mexican financial regulations. However, Defendant's defense team argued that this interest rate was usurious under Texas law, which generally caps interest rates at much lower levels. They contended that enforcing such an interest rate would violate public policy in Texas. Given this pushback, Plaintiff voluntarily nonsuited this Harris County action on June 12, 2020.

10. Now, in 2024, in the second state action, seeking enforcement of the Mexican default judgment, Defendant's defense raised significant due process concerns regarding the proceedings in Mexico. They argued that Defendant was not properly served with the lawsuit in Mexico, resulting in a default judgment that did not afford him a fair opportunity to defend himself. This alleged failure to comply with due process protections undermined the legitimacy of the Mexican court's judgment.

11. In light of these concerns, Defendant's defense team argued that the

judgment was unenforceable under the Uniform Foreign-Country Money Judgments Recognition Act (UFCMJRA). The UFCMJRA allows U.S. courts to refuse recognition of foreign judgments if they violate due process or are contrary to public policy. Given the usurious nature of the interest rate and the due process violations, Defendant's defense asserted that the Mexican judgment should not be recognized or enforced in Texas.

12. Throughout 2020 and 2021, the case saw a series of motions and legal challenges, with both parties arguing jurisdictional issues, due process concerns, and the enforceability of the promissory note under the UFCMJRA. Meanwhile, in Mexico, the court encountered significant difficulties in serving Defendant, leading to delays and complications in the proceedings. Ultimately, the Mexican court declared Defendant in "rebeldia" (default) due to his failure to respond, allowing Plaintiff to pursue asset liquidation to satisfy the debt.

13. By early 2023, despite the unresolved legal battles, the Mexican court ruled in favor of Plaintiff, ordering Defendant to pay the 17 million pesos plus interest. However, enforcement faced challenges due to the ongoing dispute over the judgment's enforceability under U.S. law, particularly given the arguments concerning usury and due process violations.

Defendant also filed an "amparo" (constitutional appeal) in Mexico, challenging the legal process and the validity of the promissory note. This appeal

was ultimately denied, with the Mexican judiciary upholding the original judgment. As of August 2024, the case remains unresolved, with continued efforts to enforce the judgment and liquidate Defendant's assets both in Mexico and the United States, amid ongoing legal arguments over due process, usury, and the applicability of the UFCMJRA.

14. Defendant incorporates by reference factual allegations made in his affidavit, attached hereto.

## ARGUMENT

**Standards for Recognition of Foreign-Country Judgment.**

15. Pursuant to Texas Civil Practice and Remedies Code §36A.004(b), a court of this state may not recognize a foreign-country judgment if:

   (1) the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

   (2) the foreign court did not have personal jurisdiction over the defendant; or

   (3) the foreign court did not have jurisdiction over the subject matter.

16. Pursuant to Texas Civil Practice and Remedies Code Sec. 36A.004(c), a court of this state is not required to recognize a foreign-country judgment if:

   (1) the defendant in the proceeding in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend;

   (2) the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present the party's case;

(3) the judgment or the cause of action on which the judgment is based is repugnant to the public policy of this state or the United States;

(7) the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering court with respect to the judgment;

(8) the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law; or

17. In this matter, the procedures taken were not compatible with the requirements of due process of law. Under the Texas Recognition Act, a court's inquiry as to the compatibility of a foreign court's decision with due process focuses on the fairness of the foreign judicial system as a whole, rather than the specific judgment challenged. In re *Carmona, Bkrtcy.* S.D.Tex.2018, 580 B.R. 690. Judgment Key Number 830.1.

18. If a foreign judgment was rendered under a system that does not provide impartial tribunals or due process, then that is mandatory grounds for nonrecognition under the Texas Recognition Act. *Id.*

## Specific Due Process Violations

19. The Defendant contends that the judgment rendered by the Mexican court failed to meet the basic standards of due process required under both Mexican and Texas law. Specifically, the Defendant was not properly served with the lawsuit, was deprived of an adequate opportunity to defend himself, and was subjected to proceedings that did not adhere to fundamental principles of fairness:

20. **Improper Service of Process**: The Defendant was not properly served with the Mexican lawsuit, a critical procedural flaw that undermines the legitimacy of the judgment. The Mexican court's service of process did not comply with the Hague Service Convention, which governs international service of judicial documents between signatory countries, including Mexico and the United States. The failure to follow these international procedures resulted in the Defendant being unaware of the legal action against him, effectively denying him the opportunity to contest the allegations.

21. Specifically, Defendant, a Texas and U.S. National, who resides in Texas, a fact known to Plaintiff, requires such service to comply with the Hague Convention.

22. Defendant has not waived this argument due to failure to bring it up under the Aguascalientes Appeal case, as the procedures in such a case are not binding on any Texas or Federal court.

23. The Hague Convention is triggered when "a transmittal abroad is required as a necessary part of service." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988). As Plaintiffs have asserted that Defendant was impossible to be found in Mexico, and they had his address and ability to locate him in Texas (as they had done so before AND after this Mexican case) the Hague Convention was implicated.

24. **Lack of Notice and Opportunity to Be Heard**: Due process under Texas law and the Texas Recognition Act requires that a defendant be given adequate notice of the proceedings and a reasonable opportunity to present a defense. In this case, the Defendant was not afforded either. The service was irregular and insufficient, and the notice provided was neither timely nor clear, depriving the Defendant of a fair chance to respond before the Mexican court entered a default judgment against him.

25. **Procedural Irregularities and Judicial Bias**: The Mexican court's handling of the case demonstrated significant procedural irregularities, including accelerated hearings without proper notice, denial of motions without adequate explanation, and the issuance of a judgment in "rebeldía" (default) without confirming proper service. Such actions raise substantial doubts about the impartiality and integrity of the judicial proceedings, violating the requirement of an impartial tribunal as mandated by Texas Civil Practice and Remedies Code §36A.004(b)(1).

26. **Failure to Provide a Meaningful Defense**: The Defendant attempted to challenge the judgment through an "amparo" (constitutional appeal) in Mexico, arguing that his due process rights were violated. However, the appeal was denied without adequate consideration of these procedural deficiencies. This failure to rectify due process violations at the appellate level further highlights the

incompatibility of the Mexican proceedings with the fundamental principles of due process recognized under Texas law.

27. **Texas Recognition Act Standards**: Under the Texas Recognition Act, a foreign judgment should not be recognized if it was obtained through proceedings that were not compatible with the requirements of due process of law. The Act focuses on whether the judicial system as a whole provides impartial tribunals and fair procedures, not merely whether the specific judgment was unfair. Here, the systemic flaws in service, the denial of a proper defense, and the questionable impartiality of the Mexican court demonstrate a clear failure to meet these standards.

28. Furthermore, enforcing a judgment obtained under these circumstances would violate Texas public policy, which mandates that all legal proceedings, whether domestic or foreign, adhere to basic principles of fairness, due process, and impartiality. Texas courts have consistently refused to recognize judgments that were rendered in a manner inconsistent with these principles, as seen in cases like In re Carmona, 580 B.R. 690 (Bankr. S.D. Tex. 2018), which emphasized the need for foreign courts to provide fair procedures equivalent to those required by Texas law.

**Defendant Did Not Receive Notice of the Proceeding.**

29. Defendant was not personally served with Citation. Even though,

Plaintiff provided four addresses to the District Court in Texas, he provided only one address to the Mexican Court, 29 Mayapple Blossom Place, Tomball, Texas 77375, an address at which Plaintiff knew Defendant would not be found.

30. Plaintiff then proceeded to petition the Mexican Court for service to Defendant by publication by stating under oath that he knew of only one address at which Defendant could be served. The Court granted the service by publication based on a false premise.

31. Even though Defendant had been served, both before and after the Mexican case, in Texas, Plaintiff represented that he didn't know where Defendant could be found. However, Defendant's address was easily found through public records, such as Harris County Central Appraisal District and deed records. See Defendant's Affidavit. The inescapable conclusion is that Plaintiff actively avoided looking for a place to give Defendant actual notice of the case.

**Judgment was Obtained by Fraud.**

32. Service by publication is granted by Mexican courts only when the Defendant cannot be found and an address and there are no other known addresses. In this case, Plaintiff stated to the Court that he knew of no other addresses at which Defendant could be served, yet he had provided three other addresses to the Texas Court for service of Defendant. The judgment was obtained by fraud.

33. It should be noted that Plaintiff successfully served Defendant in both

Harris County cases, but suspiciously failed to do so in the Mexican court case (the only one that resulted in a default judgment in his favor).

**Judgment is Repugnant to the Public Policy of this State: Usury.**

34. In this case, the case on which the judgment is based is clearly repugnant to the public policy of the state of Texas regarding usury. The promissory note on which the claim was based had an annual effective rate of 36.96%, more than twice the amount allowed under Texas law.

35. In order to establish a claim for usury, Movants are required to prove (1) a loan of money, (2) an absolute obligation to repay the principal, and (3) the exaction of greater compensation than is allowed by law for the borrower's use of the money." *Willliams v. Bell*, 402 S.W.3d 28, 36 (Tex. App. Houston [14th Dist.] 2013, pet. denied.).

36. Pursuant to Texas Civil Practice and Remedies Code §36A.004(d), A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in Subsection (b) or (c) exists.

37. Plaintiff states in his Motion, that Defendant stated in an Affidavit that Defendant would "abide by any "properly rendered final judgment" from a Mexican court." The judgment in this case was not properly rendered as Defendant did not receive notice and was deprived of a defense as to the existence of the transaction. Defendant also stated in said Affidavit that he would "appear in a Mexican court to

litigate the Note in "good faith"." Here, good faith did not exist on the part of Plaintiff.

## CONCLUSION

38. Defendant never received money on the Note from Plaintiff, was not properly or actually served and never had the opportunity to defend the claims against him. The judgment rendered by the Mexican court failed to meet the basic standards of due process required under both Mexican and Texas law, The judgment against Defendant was obtained by fraud on the part of Plaintiff. The judgment is repugnant to the public policy of Texas. This Court should not recognize the Mexican Judgment.

Respectfully submitted,
SAN MIGUEL ATTORNEYS, PC

_____
Alan Ray San Miguel
Texas Bar No. 24072323
Southern District Bar No. 1132614
Grant McEwen
Texas Bar No. 24062880
Email: service@sanmiguel.law
10077 Grogans Mill Road, Suite 135
The Woodlands, Texas 77380
Tel: (713) 795-5299
Fax: (713) 554-0611
Attorneys for Defendant
Jorge Romo, Jr.

## CERTIFICATE OF SERVICE

I certify that on January 8, 2025, a true and correct copy of the foregoing instrument was served upon all counsel of record and/or parties via ECF, in compliance with Fed. R. Civ. P. 5.

**JACKSON WALKER L.L.P.**
Javier Gonzalez
Texas Bar No. 24119697
Southern District Bar No. 3722324
jgonzalez@jw.com
Tel: (713) 752-4200
1401 McKinney, Suite 1900
Houston, Texas 77010

_____
Alan Ray San Miguel