United States District Court
Southern District of Texas
**ENTERED**
June 25, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| OSCAR FERNANDO GONZALEZ OBREGON, | § § § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | Case No. 4:24-cv-3371 |
| | § | |
| JORGE ROMO, JR., | § | |
| *Defendant.* | § | |

## <u>ORDER</u>

Various motions are pending before the Court. Based on the briefing, record, and relevant law, the Court rules as follows:

**I.    The Court Denies Defendant's Motion to Vacate the Final Judgment. ECF No. 79.**

Defendant's motion to vacate the final judgment due to lack of finality and alternatively, lack of clarity regarding interest calculation, amount of attorney fees, and exchange rate is denied. ECF No. 79. Although Defendant moves under Rules 54 and 58,[1] after final judgment is entered in a case, a party may seek to vacate a

---

[1] Rule 54 applies to interlocutory orders and Rule 58 does not contain any provision related to vacating, amending, or altering a final judgment. *See* Fed. Rs. Civ. P. 54 & 58. Defendant's argument that Plaintiff's failure to move for fees 14 days following entry of judgment makes the final judgment incomplete is unsupported by the Rules. Rule 54 expressly permits final judgment to be entered without a determination of attorney fees. Fed. R. Civ. P. 54(d)(2)(B); *see also* Fed. R. Civ. P. 58 (e) ("Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees"). That Plaintiff did not move for attorney fees in this Court demonstrates that he intends to stand on the Mexican Judgment's award of fees, which as discussed below, is calculated under Mexican law as 10% of the principal and interest. Further, Defendant did not produce any authority to this point or otherwise demonstrate its motion to vacate is proper under either rule. Defendant's cited case, *GeoSouthern Energy Corp. v. Chesapeake*

final judgment one of two ways, depending on the motion's timing: (1) under Rule 59; or (2) under Rule 60.

The Final Judgment was entered on March 31, 2025. ECF No. 28. Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Because this motion was filed more than 28 days after March 31, 2025, on June 9, 2025, Defendant is not entitled to relief under Rule 59. Under Rule 60(a), cited by Defendant and which allows amendment to correct clerical mistakes, inaccuracies of transcription, inadvertent omissions, and errors in mathematical calculations, "after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." Fed. R. Civ. P. 60(a). Defendant filed a notice of appeal on April 29, 2025, ECF No. 30, but has not sought leave from the appellate court.

---

*Operating, Inc.*, 241 F.3d 388, 391–92 (5th Cir. 2001), is inapposite—there, the Fifth Circuit determined the final judgment was not final and appealable because the computation of damages was "relatively complex" and more than a ministerial task as it involved "dividing up an ongoing revenue stream," and "the tracking of production over time." Here, the calculation of damages involves repayment of a debt—a fixed amount that accrues interest at a fixed rate until fully paid, and the repayment of fees and expenses, all of which is governed by Mexican law and otherwise included in the Mexican Judgment. The calculation of the exchange rate from pesos to dollars does not further complicate this analysis. Insofar as failure to include the calculation of interest, attorney fees, or exchange rates is actionable, such omissions would fall under Rule 60(a), which require leave of the appellate court. *See Craig v. GACP II, L.P.*, No. 3:19-CV-0058-G, 2022 WL 1778392, at *3 (N.D. Tex. June 1, 2022).

This leaves Rule 60(c), which allows a Rule 60(b) motion[2] to be "made within a reasonable time." Fed. R. Civ. P. 60(c). Defendant appears to move under rule 60(b)(3),[3] but does not establish any of the bases enumerated in Rule 60(b) by clear and convincing evidence. *See* ECF No. 79. Defendant's motion to vacate is denied.

As a result, Defendant's motion to stay proceedings pending resolution of his motion to vacate the final judgment is denied as moot. ECF No. 91.

## II.    The Court Issues a Turnover Order and a Charging Order. ECF No. 35.

The Court previously admonished Defendant that his failure to post bond would automatically initiate collection proceedings on the unsatisfied judgment. ECF No. 57. Because Defendant failed to post bond, the Court takes up Plaintiff's motion for turnover order. ECF No. 35. Plaintiff moved for an order turning over

---

[2] "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60 (b).

[3] "Rule 60(b)(3) provides a basis for relief from judgment where the movant presents clear and convincing evidence of fraud, misrepresentation, or other misconduct by an opposing party." *Silvio v. Ocwen Loan Servicing*, No. CV H-14-3065, 2016 WL 6883189, at *1 (S.D. Tex. Feb. 23, 2016) (citing Fed. R. Civ. P. 60(b)(3); *Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 641 (5th Cir. 2005)). "A party making a Rule 60(b)(3) motion must establish by clear and convincing evidence that (1) the adverse party engaged in fraud or other misconduct, and (2) this misconduct prevented the moving party from fully and fairly presenting his case." *Id.* (citing *Walker v. Transfrontera CV de SA*, 2015 WL 9266637, *5 (5th Cir. Dec. 18, 2015)). As the Court previously found, Defendant's allegations fail to address that the alleged misconduct prevented Defendant from fully and fairly presenting his case. *See* ECF Nos. 57, 79.

Defendant's interests in certain real property and other non-exempt assets and also requests a charging order for Defendant's membership interests. Plaintiff's motion is granted as set forth below. ECF No. 35.

Texas law, applicable here,[4] "provides judgment creditors with a procedural device to assist them in satisfying their judgment debts." *Johns Law Firm, LLC v. Pawlik*, No. 4:22-CV-01877, 2024 WL 5185685, at *1 (S.D. Tex. Sept. 20, 2024), *adopted*, No. 4:22-CV-01877, 2025 WL 754502 (S.D. Tex. Mar. 10, 2025) (quoting *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018)). The Court can "aid a judgment creditor in satisfying outstanding liabilities by 'order[ing] the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control,'" *id.* (quoting Tex. Civ. Prac. & Rem. Code § 31.002(a)-(b)(1)), "even if those assets are in the hands of a third party," *id.* (quoting *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir. 1997) (citing *Norsul Oil & Mining Ltd. v. Com. Equip. Leasing Co.*, 703 S.W.2d 345, 349 (Tex. App.—San Antonio 1985, no writ))).

---

[4] "Federal Rule of Civil Procedure 62(b) allows a party to 'obtain a stay by providing a bond or other security' on execution of the judgment and proceedings to enforce it '[a]t any time after judgment is entered.' Fed. R. Civ. P. 62(b). In the absence of such a stay, the judgment is enforceable. Fed. R. Civ. P. 62. Federal Rule of Civil Procedure 69 states that a money judgment is enforced by a writ of execution and that the procedure on execution, as well as in related proceedings, must accord with the procedure of the state where the court is located. Fed. R. Civ. P. 69." *MWK Recruiting, Inc. v. Jowers*, 749 F.Supp.3d 769, 771 (W.D. Tex. 2024).

"A judgment creditor need only trace assets to a judgment debtor before a 'presumption arises that the judgment debtor possesses the assets subject to turnover and the burden shifts to the judgment debtor to account for the assets.'" *Id.* at *2 (quoting *Enex Int'l, Inc. v. Prime 3 Grp., LLC*, 2020 WL 6731019, at *1 (S.D. Tex. Oct. 27, 2020) (quoting *Dynamic Sports Nutrition, Inc. v. Roberts*, 2009 WL 10711815, at *8 (S.D. Tex. July 14, 2009)), *adopted by* 2020 WL 6728851 (S.D. Tex. Nov. 16, 2020)). In addition, the debtor must prove that the targeted assets are exempt from turnover. *Id.* (citing *Enex Int'l*, 2020 WL 6731019, at *1) (citing *Pillitteri v. Brown*, 165 S.W.3d 715, 722-23 (Tex. App.—Dallas 2004, no pet.))).

"Section 31.002 does not specify or restrict the way in which evidence may be received for a trial court to determine whether section 31.002(a) is satisfied." *Klinek v. LuxeYard, Inc.*, 672 S.W.3d 830, 835 (Tex. App.—Houston [14th Dist.] 2023, no pet.) (citing *Hamilton Metals, Inc. v. Global Metal Servs., Ltd.*, 597 S.W.3d 870, 878-79 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Gillet v. ZUPT, LLC*, 523 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). "Nor does the statute require that such evidence be in any particular form, that the evidence be at any particular level of specificity, or that the evidence reach any particular quantum before the court may grant aid under section 31.002." *Id.* (citing *Hamilton Metals*, 597 S.W.3d at 878-79).

### A.    Defendant's Arguments Against Turnover Fail.

At the outset, the Court addresses the arguments Defendant raises generally. First, Defendant argues that enforcement of a direct-to-Plaintiff turnover violates the Texas Constitution. ECF No. 58 at 2–3. As authority for this argument, Defendant cites *Ex parte Prado*, 911 S.W.2d 849, 850 (Tex. App.—Austin 1995, no writ), which is inapplicable to the instant case. In *Prado*, the court issued a turnover order without identifying non-exempt property or rights possessed or controlled by the debtor, requiring the debtor to pay $500 each month towards the judgment, and then when the debtor failed to pay, held the debtor in contempt by putting him in jail. 911 S.W.2d at 850. Here, the Court has not and does not subject Defendant to jail time for his failure to pay a debt and does not order turnover of any assets that have not been identified as in Defendant's possession and/or control and that Defendant has objected to as non-exempt. Defendant's concerns are misplaced and unsupported.

Defendant also argues that without a receiver, the turnover order "risks unjust enrichment and lack valuation safeguards." ECF No. 58 at 3–4. Plaintiff is unopposed to appointment of a receiver and the Court finds that based on the history of this case regarding Defendant's conduct with respect to Plaintiff's post-judgment discovery and collection efforts, a receiver would be beneficial.[5] Under the Turnover

---

[5] The Court separately finds that appointment of a receiver is appropriate in this matter. Although appointing a receiver is an unusual and extraordinary remedy, this case presents circumstances in which appointment of a receiver could aid in the payment of the judgment. The record

Statute, "[t]he appointment of a receiver requires two findings: (1) the Judgment is unsatisfied; and (2) the Judgment-Debtor owns non-exempt property." *FCCI Ins. Co. v. Marine Tech Services*, No. 4:20-CV-2716, 2024 WL 4868304, at *3 (S.D. Tex. May 28, 2024) (citing *Hamilton Metals, Inc. v. Glob. Metal Servs., Ltd.*, 597 S.W.3d 870, 876 (Tex. App.—Houston [14th Dist.] 2019, pet. denied)). As set forth herein, the Judgment is unsatisfied, and Defendant owns non-exempt property, so the Court will appoint a receiver.[6]

### B.    Certain Real Properties are Subject to Turnover.

Turning to the specific assets identified, Plaintiff sufficiently established that Defendant owns: (1) an apartment located at: 6607 Lake Woodlands Drive #213, the Woodlands, Texas 77382; and (2) strip of land located at 0 Harwin Dr., Houston TX 77072. ECF No. 35 at 4 (citing Def.'s Aff., ECF No. 32-6 ¶ 4) (identifying these properties as under his ownership). Defendant does not dispute his ownership or the non-exempt status of either property. *See* ECF No. 58. This is sufficient to warrant appointment of a receiver.[7] *Klinek*, 672 S.W.3d at 838.

---

demonstrates Defendant's attempts to keep from paying the still unsatisfied judgment, including failing to follow numerous Court orders demanding his transparency about his assets. Additionally, although permitted to post bond, Defendant did not and still has not done so. *See MWK Recruiting*, 749 F. Supp. 3d at 772.

[6] Because the parties have not formally requested the appointment of a receiver, the Court will require additional information.

[7] Plaintiff also moved for turnover of Defendant's 50% ownership in the property located at 3326 Roaming Woods Lane, Spring, Texas 77039. ECF No. 35 at 4 (citing ECF No. 32-6 ¶ 4).  In response, Defendant argued that Defendant's mother, who owns the other 50%, is entitled to

### C.    *Certain Corporate Shares are Subject to Turnover.*

Next, Plaintiff identifies two companies in Mexico owned by Defendant: (1) Cross Hydraulica S.A. DE C.V.; and (2) Grupo Industrial Equipos Romo S.A.P.I. DE C.V. ECF No. 35 (citing ECF No. 32-6 ¶ 5) (Defendant identifies these assets as his companies); *see also* ECF Nos. 32-7 (letter from Cross CPA noting that Defendant is the majority shareholder); 32-8 (letter from Grupo CPA that Defendant is the majority shareholder). Defendant does not dispute his ownership or the non-exempt status of either property. *See* ECF No. 58. This is sufficient to warrant appointment of a receiver.

Plaintiff also establishes that Defendant owns shares in the following corporations: (1) 13 Rattle Western Wear, Inc., 20% shares; (2) Airport BW Hospitality, Inc., 100% shares; (3) Airport Hospitality Ventures, Inc., 100% shares; (4) Bayou Hospitality SW Inc., 100% shares; (5) Global Coast Services, Inc., 50% shares; (6) The Development Group, Inc., 100% shares. *See* ECF Nos. 13; 86; Strickland Aff., ECF No. 86-1 (Kora Strickland, the Corporate Records Coordinator

---

notice, "if not a new and independent lawsuit" before issuing a turnover order. ECF No. 58 at 7. Plaintiff replied that the Court may order Defendant to turn over nonexempt property that a third party holds if the Court finds that the property is subject to the possession or control of Defendant. ECF No. 86 at 5. The Court is not satisfied that it can make that finding on the current record. And although Plaintiff tries to clarify that it only seeks turnover of the 50% ownership in this property, to receive this 50%, 100% of the physical asset must be sold or Defendant's mother will be forced to jointly own property with Plaintiff. *See* ECF No. 86. As such, the request for a turnover order regarding the property located at 3326 Roaming Woods Lane, Spring, Texas 77039 is denied without prejudice.

of Global Coast Services, swore that Defendant owns the above percentage of shares in the above entities). Defendant does not dispute his ownership or the non-exempt status of these shares. This is sufficient to warrant appointment of a receiver.

### D.    *Certain Membership Interests are Subject to a Charging Order.*

Finally, Plaintiff seeks a charging order for the various LLCs that Defendant has membership interests in: (1) Acquisition Services Group, LLC, 100% membership interest; (2) Bayou Hospitality Real Estate Fund, LLC, 100% membership interest; (3) Global Fund Management, LLC, 100% membership interest; (4) Hotel Cali Venture, LLC, 100% membership interest; (5) Hotel Holdings Group OP, LLC, 100% membership interest; and (6) Lone Star Painting and Repair, LLC, 50% membership interest. ECF Nos. 13; 86; Strickland Aff., ECF No. 86-1 (Strickland attested that Defendant owns the above percentages of the membership interest in the above entities).

To prevent a judgment creditor's disruption of an entity's business, "[a] judgment creditor of a member of a limited liability company may enforce a judgment against that member by requesting a charging order against the member's interest in the company." *Klinek*, 672 S.W.3d at 839 (citing Tex. Bus. Orgs. Code § 101.112(a)). "A charging order provides only the right to receive any distribution from the limited liability company to which the judgment debtor would be entitled" and "is a lien on the judgment debtor's membership interest that may not be

9

foreclosed." *Id.* (citing Tex. Bus. Orgs. Code § 101.112(b), (c)). Also, "the judgment creditor who obtains a charging order may not compel a limited liability company to make a distribution, take possession of the judgment debtor's membership interest, or exercise any other legal or equitable remedies with respect to company property." *Id.* (citing Tex. Bus. Orgs. Code § 101.112(c), (d), (f); *Spates v. Office of Att'y Gen.*, 485 S.W.3d 546, 556 (Tex. App.—Houston [14th Dist.] 2016, no pet.)). In sum, "[a] charging order merely directs the limited liability company to send any distributed funds up to the amounts owed by the member directly to the judgment creditor rather than to the member." *Id.* (quoting *Spates*, 485 S.W.3d at 556). Importantly, "[a] member's ownership interest in a limited liability company is a non-exempt asset." *Id.* (citations omitted). Defendant does not dispute his ownership or the non-exempt status of these membership interests, so Plaintiff is entitled to a charging order.[8]

### E.    *Plaintiff's Turnover Motion Does Not Address Defendant's Bank Accounts.*

The Court froze the following of Defendant's accounts: Amegy Account #: 5803046373; First Financial Bank Account #: 146110005429; International Bank of Commerce Account #: 2117336159; Wells Fargo account, number unknown; PNC

---

[8] The Court will not grant relief requested in the reply that was not also requested in the motion, such as Plaintiff's request to deem Defendant's wife's community property non-exempt. ECF No. 86. Even so, Plaintiff's evidence points to formation and operations, but not ownership. Therefore, insofar as Plaintiff seeks turnover or a charging order for other assets not mentioned in the Court's analysis above, that relief is denied without prejudice. *See* ECF Nos. 35, 86.

account, number unknown; Ameritrade account, number unknown; Crypto.com account, number unknown; Charles Schawb account, number unknown; Robin Hood account, number unknown; and Paypal Account #: 33349107511. ECF No. 67.

Plaintiff and Defendant do not address these frozen accounts in their multitude of filings following the Court's show cause order. By June 30, 2025, Plaintiff shall either file an amended turnover motion including these accounts or agree that the freeze on these accounts may be released. Defendant shall file a response within two (2) days of an amended motion's filing. If Plaintiff fails to file this motion, the Court will unfreeze these accounts.

III.   **Plaintiff Shall File an Amended Abstract of Judgment. ECF No. 88.**

Plaintiff next requests issuance of an abstract of judgment and writ of execution. ECF No. 88. In the proposed abstract of judgment, Plaintiff calculates the amount of the judgment as 17 million pesos, converted to $899,351.94; the amount of costs as $304,554.96, 10% of the amount due; and the rate of interest as 3.08% simple interest calculated monthly since January 31, 2019, for a total of $3,004,554.96. ECF No. 88. Defendant objects that the proposed abstract of judgment and writ of execution contain significant inaccuracies, including the 10% costs, simple interest calculation, and exchange rate, and cannot be entered because the underlying judgment is not final. ECF No. 90.

As to the argument that the judgment is not final, the Court refers to the above

analysis regarding Defendant's motion to vacate and overrules Defendant's objection. The Court next turns to the alleged inaccuracies Defendant pointed out: the interest calculation, attorney fees, and exchange rate.

The Court entered a Final Judgment in this matter that recognized the Mexican Judgment. ECF No. 28. In the Mexican Judgment, Plaintiff is awarded 17 million pesos as principal, default interest at a rate of 3.08% monthly from February 1, 2019, until the total payment of the debt, and expenses and costs generated by the processing of the lawsuit. ECF No. 6-10.

As for Defendant's allegations of inaccuracies in the calculation of the judgment, first, the interest rate in this case should be calculated as simple interest, as Plaintiff suggests and as Defendant has suggested numerous times in the past.[9] The Mexican Judgment does not expressly delineate that interest is to be calculated as compound interest and in the absence of such a provision, simple interest calculation controls. ECF No. 6-10 at 9. Compellingly, the Liquidation Order[10] Defendant relied on uses a simple interest calculation. ECF No. 45-2 at 5. Next, the 10% assessment of the combined amount of principal and interest to compensate for

---

[9] It is perplexing that Defendant argues against simple interest given that the alternative is to find that interest compounds, which could potentially double the judgment amount in this case. Furthermore, Defendant has argued for simple interest several times, in writing and orally, before the Court. ECF Nos. 45; 62 at 10–11.

[10] The Liquidation Order was entered in the proceedings in Mexico and contains calculations utilizing Mexican statutes of the Mexican Judgment as of November 13, 2023. ECF No. 45-2.

attorney fees are statutory under Mexican law, as explained in the Liquidation Order Defendant provided.[11] ECF No. 45-2 at 5. When the Court included language in the Final Judgment permitting Plaintiff to provide evidence of fees, it did so because the 10% provision had not yet been brought to the Court's attention. Now that it has, this controls how fees should be calculated according to the Mexican Judgment.

Finally, as to the exchange rate, in the absence of a contractually agreed-upon rate, "Texas courts converting foreign money judgments exercise discretion in determining the proper exchange rate to apply, depending on whether the foreign currency depreciated in value between the date of the breach and the date of the judgment." *W. African Ventures Ltd. v. Ranger Offshore, Inc.*, No. 4:17-CV-00548, 2020 WL 1898344, at *4 (S.D. Tex. Feb. 5, 2020), *aff'd sub nom. W. African Ventures Ltd. v. SunTx Capital Partners II GP, L.P.*, 841 F. App'x 705 (5th Cir. 2021) (citing *El Universal, Compania Periodistica Nacional, S.A. de C.V v. Phoenician Imports, Inc.*, 802 S.W.2d 799, 804 (Tex. Civ. App.—Corpus Christi 1990, writ denied) (establishing that, where the foreign currency depreciated in value

---

[11] Just a couple of weeks ago, Defendant asked the Court to recognize the Liquidation Order's amount "as the correct judgment." ECF No. 45 at 13. In a hearing on the issue, Defendant argued that 10% of the judgment is the proper calculation of attorney fees in this case, but asserted, without support, that this number would not grow as the amount of interest grew with the unpaid debt. ECF No. 62 at 11. The Court declined to recognize the Liquidation Order amounts, disagreeing with Defendant and instead finding that as interest grew on the unpaid debt, the amount of attorney fees also grew. ECF No. 62 at 16. Clearly, the Liquidation Order states that under Mexican law, attorney fees equal 10% of the debt and interest amount, interest which continues to grow as the debt remains unpaid. ECF No. 45-2 at 5–6.

between the date of breach and date of judgment, plaintiff should not have to bear the loss resulting from defendant's delay in payment); *Burger King Europe Gmbh v. Groenke*, No. 3:14-CV-1417-G, 2015 WL 6751121, at *11 (N.D. Tex. Nov. 5, 2015) (concluding that exchange rate on the date of breach applied because of the "significant decline" in the foreign currency's value since the date of defendant's breach)). On March 31, 2025, the date of the Final Judgment, the exchange rate was 20.4582 pesos to $1 USD.[12] On the date of Defendant's failure to pay the promissory note, January 31, 2019, the exchange rate was 19.0525 pesos to $1 USD.[13] Because the exchange rate is more favorable to Plaintiff on the date of Defendant's failure to pay, the Court uses this exchange rate and assesses the amount of principal as $892,271.36, a slightly different amount than that Plaintiff proposed.

Accordingly, Plaintiff shall file an amended abstract of judgment using this amount or provide authority for the exchange rate utilized in his original abstract of judgment. ECF No. 88.

## IV. The Court Grants Plaintiff's Motion to Deem Property Non-Exempt. ECF No. 89.

Plaintiff filed a motion to deem multiple high-value luxury vehicles as non-exempt property. ECF No. 89. Defendant filed a response, ECF No. 93, and Plaintiff filed a reply, ECF No. 94. Plaintiff requests an order identifying Defendant's luxury

---

[12] https://www.federalreserve.gov/releases/h10/20250407/ (last visited June 18, 2025).

[13] https://www.federalreserve.gov/releases/h10/20190205/ (last visited June 18, 2025).

vehicles as non-exempt assets because they each singularly exceed the aggregate valuation cap for personal property in Texas and do not constitute business vehicles necessary for Defendant's trade. ECF No. 89.

Defendant's response consists largely of recitations from various cases without any analysis. At best, Defendant argues that the Court must hold a hearing to determine what assets are exempt before issuance of a turnover order. Even if Plaintiff were seeking a turnover order, this is not true. *See Tyler v. Princip*, No. 3:14-CV-03088-M, 2025 WL 463314, at *2 (N.D. Tex. Jan. 22, 2025), *adopted sub nom. Moss v. Princip*, No. 3:14-CV-03088-M, 2025 WL 462088 (N.D. Tex. Feb. 11, 2025) ("The turnover statute itself does not require notice and a hearing prior to issuance of a turnover order.") (citing *Vaccaro v. Raymond James & Assocs., Inc.*, 655 S.W.3d 485, 489 (Tex. App.—Fort Worth 2022, no pet.)). Aside from marking them as exempt on a spreadsheet provided in post-judgment discovery, Defendant does not otherwise contest that these assets are non-exempt. *See* ECF No. 93.

Defendant identified five vehicles, which he classified as exempt personal property or business vehicles. Defendant claims as exempt personal property: (1) his wife's vehicle, a 2023 Cadillac Escalade, valued at $120,000; (2) his personal vehicle, a 2025 McLaren GTS, valued at $185,000; and (3) a 2023 Ferrari Roma, valued at $230,000. ECF No. 89-1. Further, Defendant claims two exempt business vehicles: (1) a 2024 Rolls Royce Spectre, valued at $401,000; and (2) a 2025 Rolls

15

Royce Cullingan, valued at $455,000. ECF No. 89-1.

"Personal property, as described in Section 42.002, is exempt from garnishment, attachment, execution, or other seizure if the property is provided for a family and has an aggregate fair market value of not more than $100,000, exclusive of the amount of any liens, security interests, or other charges encumbering the property." Tex. Prop. Code § 42.001 (a)(1). Section 42.002(a)(9) includes in the list of exempted personal property a "four-wheeled motor vehicle for each member of a family or single adult who holds a driver's license." *Id.* § 42.002(a)(9). Because each of the personal vehicles identified by Defendant value higher than $100,000 singularly, they do not meet the personal property exemption. Accordingly, the (1) 2023 Cadillac Escalade, valued at $120,000; (2) 2025 McLaren GTS, valued at $185,000; and (3) 2023 Ferrari Roma, valued at $230,000, are non-exempt assets. ECF No. 89-1.[14]

Section 42.002(a)(4) exempts "tools, equipment, books, and apparatus, including boats and motor vehicles used in a trade or profession." Tex. Prop. Code § 42.002(a)(4). "An item is an exempt tool of trade in Texas if the item is fairly belonging to or usable in the debtor's trade, and used with sufficient regularity to indicate an actual use by the debtor." *In re Ferro*, No. 09-80415-H3-11, 2010 WL

---

[14] Insofar as Defendant would argue that the liens on these vehicles bring their value below the $100,000 mark, this is expressly rejected in the statute. *See* Tex. Prop. Code § 42.001 (a)(1).

310857, at *2 (Bankr. S.D. Tex. Jan. 21, 2010) (quoting *In re Erwin,* 199 B.R. 628 (Bankr. S.D. Tex. 1996) (citing *In re Hrncirik,* 138 B.R. 835, 840 (Bankr. N.D. Tex. 1992))). Again, because each of the business vehicles identified have a value higher than $100,000 singularly, they do not meet the personal property exemption.[15] Accordingly, the (1) 2024 Rolls Royce Spectre, valued at $401,000; and (2) 2025 Rolls Royce Cullingan, valued at $455,000 are non-exempt assets. ECF No. 89-1. Plaintiff's motion to deem these luxury vehicles as non-exempt is granted. ECF No. 89.

## V.   Any Further Filings Will Be Struck Unless Granted Leave of Court.

Finally, no further filings shall be permitted without first seeking leave of Court. If counsel files anything without first seeking leave, the filing will be struck. The exceptions to this ruling are: (1) Plaintiff may submit an amended abstract of judgment and filing related to the frozen accounts; (2) if Plaintiff files a motion seeking turnover of the frozen accounts, Defendant may file a response; and (3) the parties shall submit the name and relevant information of an individual to be appointed as receiver under Tex. Civ. Prac. & Rem. Code § 31.002(b)(3).

## VI.   CONCLUSION

In conclusion, the Court **ORDERS**:

- Defendant's motion to vacate the final judgment due to lack of finality,

---

[15] Furthermore, Defendant did not even attempt to establish that either vehicle was fairly belonging to or usable in his trade or used with sufficient regularity to indicate an actual use.

alternatively, lack of clarity regarding interest calculation, amount of attorney fees, and exchange rate is **DENIED**. ECF No. 79.

- Defendant's motion to stay proceedings pending resolution of his motion to vacate the final judgment is **DENIED AS MOOT**. ECF No. 91.

- Plaintiff's motion for turnover order, ECF No. 35, is **GRANTED** as follows:

    o The Court shall appoint a receiver with authority to take possession of the following nonexempt property, sell it, and pay the proceeds to Plaintiff to the extent required to satisfy the judgment, pursuant to Tex. Civ. Prac. & Rem. Code § 31.002(b)(3). By ***June 30, 2025***, the parties shall provide the name and information of an individual for the Court to appoint as receiver. The parties shall also address the propriety of a receiver's fee. The Court will not require Plaintiff to post a bond upon the receiver's appointment. *See FCCI Ins. Co. v. Marine Tech Services*, No. 4:20-CV-2716, 2024 WL 4868304, at *5 (S.D. Tex. May 28, 2024).

    o The following physical assets are owned and controlled by Defendant, are non-exempt, available and subject to turnover: (1) an apartment located at: 6607 Lake Woodlands Drive #213, the Woodlands, Texas 77382; and (2) strip of land located at 0 Harwin Dr., Houston TX 77072.

    o The following corporate shares are owned and controlled by Defendant, are non-exempt, available and subject to turnover: (1) 13 Rattle Western Wear, Inc., 20% share; (2) Airport BW Hospitality, Inc., 100% share; (3) Airport Hospitality Ventures, Inc., 100% share; (4) Bayou Hospitality SW Inc., 100% share; (5) Global Coast Services, Inc., 50% share; (6) The Development Group, Inc., 100% share; (7) Cross Hydraulica S.A. DE C.V., majority share; and (8) Grupo Industrial Equipos Romo S.A.P.I., majority share.

    o Defendant and his agents or representatives refrain from interfering with or hindering the transfer or assignment of the identified

property or the disbursement of any funds from the identified property, or encumbering any of the identified property.

- Plaintiff's motion for a charging order, ECF No. 35, is **GRANTED** as follows:

  - The following membership interests are owned and controlled by Defendant, are non-exempt, available and subject to a charging order: (1) Acquisition Services Group, LLC, 100% membership interest; (2) Bayou Hospitality Real Estate Fund, LLC, 100% membership interest; (3) Global Fund Management, LLC, 100% membership interest; (4) Hotel Cali Venture, LLC, 100% membership interest; (5) Hotel Holdings Group OP, LLC, 100% membership interest; and (6) Lone Star Painting and Repair, LLC, 50% membership interest.

  - Each Charged Entity shall: (i) record the existence and contents of this Order in its books and records of account; (ii) separately account and maintain separate records for all distributive shares of the profits and surpluses of the Charged Entities including cash or other property distributions due to any Defendant from the Charged Entities, and make such accountings and records available to Plaintiff upon request; and (iii) within fourteen days of the date of any distribution to Defendant in relation to Defendant's membership or partnership interest, deliver to Plaintiff all such cash and other property distributable or due to any Defendant from such Charged Entities.

  - This Order shall constitute a lien Defendant's membership or partnership interest in each Charged Entity and in any distribution made by the Charged Entities to any Defendant in relation to such Defendant's membership or partnership interest.

  - To the extent any third-party entity, specifically including financial entity, is requested by Defendant to distribute any monies or property by any Charged Entity or its representatives, said third party entity shall refrain from doing so and instead convey said disbursement to Plaintiff.

- Plaintiff shall file a turnover order addressing Defendant's frozen accounts by June 30, 2025.

- Plaintiff's motion requesting the issuance of an abstract of judgment and writ of execution is **DENIED WITHOUT PREJUDICE** to refiling. ECF No. 88.

- Plaintiff's motion to deem property non-exempt is **GRANTED**. ECF No. 89. The following luxury vehicles are non-exempt property:

  o (1) Defendant's wife's vehicle, a 2023 Cadillac Escalade, valued at $120,000; (2) Defendant's personal vehicle, a 2025 McLaren GTS, valued at $185,000; and (3) a 2023 Ferrari Roma, valued at $230,000; (5) a 2024 Rolls Royce Spectre, valued at $401,000; and (5) a 2025 Rolls Royce Cullingan, valued at $455,000.

- Any further filings other than those expressly discussed above shall be struck unless granted leave of Court.

**IT IS SO ORDERED.**

Signed at Houston, Texas, on June 24, 2025.

Dena Palermo
_____
Dena Hanovice Palermo
United States Magistrate Judge